## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD EDWARD ERBE, | |
| Plaintiff, | CIVIL ACTION NO. 3:20-cv-02132 |
| v. | (SAPORITO, M.J.) |
| COMMISSIONER OF SOCIAL SECURITY of the United States of America, | |
| Defendant. | |

## MEMORANDUM

In this matter, the plaintiff, Richard Edward Erbe, seeks judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits, pursuant to 42 U.S.C. § 405(g). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

### I.   BACKGROUND

On April 16, 2018, Erbe protectively filed an application for disability insurance benefits, asserting a disability onset date of December 26, 2012. His application was initially denied by state agency reviewers on September 26, 2018. The plaintiff then requested an

administrative hearing.

A hearing was subsequently held on July 9, 2019, before an administrative law judge, Mike Oleyar (the "ALJ"). In addition to the plaintiff himself, the ALJ received testimony from an impartial vocational expert, Agnes Gallen. The plaintiff was represented by counsel at the hearing.

On August 30, 2019, the ALJ denied Erbe's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Erbe was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential evaluation process). At step one, the ALJ found that Erbe had not engaged in substantial gainful activity during the period between his alleged disability onset date, December 26, 2012, and his date last insured, March 31, 2017.[1] At step two, the ALJ found that Erbe had the severe impairments of: traumatic brain injury; post concussion syndrome with post traumatic headaches; cervical and thoracic degenerative disc disease; history of cervical fusion; cervical radiculopathy; post

_____

[1] *See generally* 42 U.S.C. § 423(c)(1); 20 C.F.R. § 404.130.

laminectomy syndrome; occipital neuralgia; cervicalgia; paresthesia of bilateral extremities; and a history of spinal fractures. At step three, the ALJ found that Erbe did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Between steps three and four of the sequential-evaluation process, the ALJ assessed Erbe's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Erbe had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a),[2] with the following limitations:

> [H]e requires an option to alternate his position from sitting to standing every thirty (30) minutes. He is limited to frequent stooping, kneeling, crouching, crawling, climbing ramps and stairs, and handling, fingering, and feeling with his bilateral upper extremities and only occasional balancing, but can never reach overhead with his bilateral upper extremities or climb on ladders, ropes, or scaffolds. The claimant can also never operate a motor vehicle and must avoid all exposure to atmospheric conditions, extreme cold and heat, wetness, humidity, vibration,

---

[2] The Social Security regulations define "sedentary work" as a job that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

> and hazards, such as unprotected heights and dangerous moving mechanical parts. He is capable of performing work involving simple, routine tasks in an environment with no more than a moderate noise level.

(Tr. 19.)

In making these factual findings regarding Erbe's RFC, the ALJ considered his symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 404.1529; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. § 404.1520c.

At step four, based on this RFC and on testimony by the vocational expert, the ALJ concluded that Erbe was unable to perform his past relevant work as actually and generally performed.

At step five, the ALJ concluded that Erbe was capable of performing other work that exists in significant numbers in the national economy. Based on his age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Erbe was capable of performing the requirements of representative occupations

such as: survey worker (DOT # 205.367-054), order clerk (DOT # 209.567-014), or document prep person (DOT # 249.587-018). Based on this finding, the ALJ concluded that Erbe was not disabled for Social Security purposes.

The plaintiff sought further administrative review of his claims by the Appeals Council, but his request was denied on September 14, 2020, making the ALJ's August 2019 decision the final decision of the Commissioner subject to judicial review by this court.

The plaintiff timely filed his complaint in this court on November 16, 2020. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II. DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security

disability insurance benefits and supplemental security income administrative decisions).

Erbe asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ erred at step three in finding that he did not have an impairment or combination of impairments that met the "B paragraph" criteria of Listed Impairment 11.18, concerning traumatic brain injury; (2) the ALJ failed to properly evaluate prior administrative findings, including the medical opinions of a state agency medical consultant; (3) the ALJ failed to properly evaluate the medical opinions of a treating physician; and (4) viewed in whole, the evidence of record supported a finding of disability.

## A. Listing 11.18B

The plaintiff initially suffered a traumatic brain injury as a result of a motor vehicle collision in 2001. He suffered a second traumatic brain injury in a slip and fall accident in 2012. As a result of these cumulative traumatic brain injuries, Erbe argues that the ALJ should have found him disabled at step three of the five-step evaluation process.

But mere diagnosis of a listed impairment is insufficient to establish disability. *See* 20 C.F.R. § 404.1525(d) ("Your impairment(s)

cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, you must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."). A claimant bears the burden of establishing each element of a Listing, or 'all of the criteria in the listing.' If even one element is not satisfied, then the ALJ has substantial evidence to conclude that the claimant's impairment is not equivalent and does not meet a Listing." *Weidman v. Colvin*, 164 F. Supp. 3d 650, 659 (M.D. Pa. 2015) (quoting 20 C.F.R. § 404.1525(d)); *see also Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

At step three, the ALJ found that Erbe did not satisfy the criteria of any of the listings. In particular, the ALJ considered listing 11.18, concerning traumatic brain injury. With respect to this listing, the ALJ stated:

> This listing requires disorganization of motor function in two (2) extremities resulting in an extreme limitation in the ability to stand from a seated position, balance while standing or walking, or use of the upper extremities *OR* a marked limitation in physical functioning and in an area of mental functioning. The medical evidence of record shows that the claimant has an unsteady gait, but ambulates effectively and although there is evidence of decreased sensation, he utilizes his upper extremities; there is no indication that his limitations rise to the level of requisite disorganization. Further, the claimant's conditions do

> not cause marked physical or mental limitations. The
> claimant remains independent in his self-care,
> ambulates, and while some reference to decreased
> concentration is noted, he reported that he can make
> simple meals and perform word find puzzles.

(Tr. 19.) Based on this, the ALJ concluded that the record did not
"establish the medical signs, symptoms, laboratory findings or degree of
functional limitation required to meet or equal the criteria of any listed
impairment." (*Id.*)

Listed Impairment 11.18 may be established by satisfying *either*
the "Paragraph A" criteria *or* the "Paragraph B" criteria set forth in
Section 11.18 of the Listing of Impairments. *See* 20 C.F.R. pt. 404, subpt.
P, app. 1, § 11.18. As set forth in the Listing of Impairments, these
criteria are:

> A. Disorganization of motor function in two
> extremities, resulting in an extreme limitation in the
> ability to stand up from a seated position, balance
> while standing or walking, or use the upper
> extremities, persisting for at least 3 consecutive
> months after the injury; or

> B. Marked limitation in physical functioning, and in
> one of the following areas of mental functioning,
> persisting for at least 3 consecutive months after the
> injury:

> > 1. Understanding, remembering, or applying
> > information; or

2. Interacting with others; or

3. Concentrating, persisting, or maintaining pace; or

4. Adapting or managing oneself.

*Id.*

Here, the plaintiff contends that he has satisfied the Paragraph B criteria, demonstrating a marked limitation in physical functioning plus a marked limitation in his ability to concentrate, persist, or maintain pace. A "marked limitation in physical functioning" means that a claimant is "seriously limited in the ability to independently initiate, sustain, and complete work-related physical activities," *id.* § 11.00G2a, such as "[s]tanding up from a seated position, balancing while standing or walking, or using both your upper extremities for fine and gross movements," *id.* § 11.00G3a. This limitation may be caused by the neurological disorder itself, or by pain, fatigue, or other symptoms of the neurological disorder. *See id.* § 11.00G3a. A marked limitation in mental functional area of concentrating, persisting, or maintaining pace means that a claimant is "seriously limited in the ability to function independently, appropriately, effectively, and on a sustained basis in work settings," *id.* § 11.00G2b, with respect to his or her "abilities to focus

attention on work activities and to stay on-task at a sustained rate," *id.* § 11.00G3b(iii), such as "[i]nitiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day," *id.*

Beyond a conclusory argument, the plaintiff cites no evidence to support his contention that he had a "marked limitation in physical functioning." As the ALJ noted in support of his finding, although Erbe had been noted with an unsteady gait and there was evidence of some decreased sensation, he was able to ambulate effectively and to use both upper extremities for fine and gross manipulation. In the absence of compelling evidence of a marked limitation in physical functioning, the ALJ had substantial evidence to conclude that Erbe's impairment due to traumatic brain injury did not meet or equal the criteria of listing 11.18B. *See Weidman*, 164 F. Supp. 3d at 659.

The only evidence cited by the plaintiff concerns the plaintiff's ability to concentrate, persist, or maintain pace. The plaintiff cites a July 2013 progress note by one treating neurologist in which the physician recorded Erbe's subjective complaint that he suffered "excruciating pain" and migraine headaches following the "slightest degree of physical activity," such as gardening or picking up laundry (*see* Tr. 749), and a March 2014 progress note by another treating neurologist in which the physician recorded Erbe's subjective complaint that he suffered about ten headaches of varying intensity per week, causing him to experience some confusion (*see* Tr. 826). The ALJ considered these and other subjective statements by the plaintiff, but based on his review of the whole record, the ALJ concluded that Erbe's subjective statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 20.) As the ALJ later commented, in considering medical records and other evidence concerning this same time frame:

> [I]n February of 2013 and November 2014, the claimant was noted to have some mental fog and decreased concentration. However, generally, the mental status examinations of record show he is alert, oriented in all spheres, with an intact memory. It is also noted that the claimant is independent in his self-

> care and activities of daily living including, making
> simple meals, washing dishes, doing laundry, mowing
> the lawn with an automatic lawnmower, shopping for
> groceries, and performs word find puzzles.

(Tr. 21 (citations omitted).) Thus, in the absence of *compelling* evidence of a marked limitation in one of the four areas of mental functioning, the ALJ had substantial evidence to conclude that Erbe's impairment due to traumatic brain injury did not meet or equal the criteria of listing 11.18B. *See Weidman*, 164 F. Supp. 3d at 659.

Accordingly, we find the ALJ's step-three determination that Erbe did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## B. Medical Opinions and Prior Administrative Findings

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of conflicting medical opinions and prior administrative findings presented in the administrative proceedings below. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between"

conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed his administrative claim for benefits in April 2018. Thus, a relatively new regulatory framework

governing the evaluation of medical opinion evidence applies to this case.

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*,

527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. § 404.1520c(b). If a medical source provides one or more medical opinions, the agency will consider those medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at

481; *see also* 20 C.F.R. § 404.1520c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 404.1520c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. § 404.1520c(c)(1) (supportability), and *id.* § 404.1520c(c)(2) (consistency), *with id.* § 404.1527(c)(3) (supportability), and *id.* § 404.1527(c)(4) (consistency).[3] An ALJ is specifically required to address these two factors in his or her decision. *See* 20 C.F.R. § 404.1520c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20

---

[3] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

C.F.R. § 404.1520c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 404.1520c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

### 1. *Prior Administrative Findings*

The ALJ considered the prior administrative findings in this case, which included the opinions of state agency medical consultant, Kevin Hollick, D.O., who had found the claimant capable of performing light work with some postural, manipulative, and environmental limitations. Based on his review of Erbe's medical records, Dr. Hollick found that Erbe was capable of lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently. Dr. Hollick found that Erbe was capable of frequent crawling, but only occasional balancing or climbing of ladders, ropes, or scaffolds. Dr. Hollick found that Erbe was limited to occasional overhead reaching bilaterally, and he was required to avoid concentrated exposure to noise, vibration, fumes, odors, dusts, gases, poor ventilation, or hazards such as unprotected heights or moving machinery.

Upon review, the ALJ found Dr. Hollick's findings and opinions to be "generally persuasive." In particular, the ALJ stated that:

> Dr. [Hollick] reviewed the medical evidence and determined the claimant was capable of a less than full range of light exertional work involving limited overhead reaching and postural and environmental limitations. In consideration of his history of back and neck-related issues, the undersigned reduced the claimant to sedentary exertional work. However, the remaining manipulative, postural, and environmental limitations are supported by the clinical evidence of record, such as his EMG testing and MRI of his cervical spine showing mild radiculopathy and result of physical examinations showing an unsteady gait and upper extremity weakness and sensory deficits. Therefore, this opinion was determined generally persuasive.

(Tr. 22.)

The plaintiff only addresses the evaluation of this particular medical opinion in passing, in the penultimate paragraph of the conclusion of his brief. He appears to object to this evaluation of the state agency medical consultant's findings and opinions based solely on the fact that Dr. Hollick never actually examined Erbe in person. But the medical opinion of a non-examining medical source, such as a state agency medical or psychological consultant, may serve as substantial evidence to the extent the opinion is consistent with other medical evidence in the

record. *See Nichols v. Comm'r of Soc. Sec.*, 404 Fed. App'x 701, 704–05 (3d Cir. 2010); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 107 (W.D.N.Y. 2021); *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018).

Accordingly, we find the ALJ's evaluation of the prior administrative findings concerning the plaintiff's physical limitations, including the medical opinions of the state agency medical consultant, Dr. Hollick, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 2. *Treating Neurologist Statement*

On September 4, 2015, Erbe's treating neurologist, John E. Castaldo, M.D., provided a letter to Erbe's attorney, reproducing the substance of Dr. Castaldo's treatment notes over the course of their treatment relationship, from March 2014 through July 2015, and responding to several questions posed by the attorney.[4] (Tr. 825–34.) In

---

[4] The doctor appears to have cut and pasted his entire set of treatment notes for Erbe into the body of the letter. All but the last page of the letter consists of these treatment notes. The last page includes short answers to seven numbered questions posed by the attorney. The questions themselves are not included in the letter.

response to one of the attorney's questions, Dr. Castaldo responded: "Currently Mr. Erbe cannot work to full capacity due to neck and head pain." (Tr. 834.)

The plaintiff contends that the ALJ erred in failing to find this statement by Dr. Castaldo persuasive, particularly relative to the other medical opinion evidence of record. The ALJ expressly acknowledged this statement by Dr. Castaldo, stating:

> While it is not an opinion, the undersigned also considered the September 4, 2015[,] statement of Dr. Castaldo indicating that since the claimant's December 26, 2012[,] injury, he was unable to work at full capacity. Based upon a review of the evidence of record, as detailed above, there is not sufficient evidence to support the claimant having the inability to sustain work.

(Tr. 22 (citation omitted).)

The ALJ correctly determined that the neurologist's statement regarding Erbe's inability to "work to full capacity" was "inherently neither valuable nor persuasive" under the applicable regulations which expressly and exclusively reserve to the Commissioner (or the ALJ as her designee) the ultimate issue of whether the claimant is disabled. *See* 20 C.F.R. § 404.1520b(c)(3); *see also Knittle*, 2021 WL 5918706, at *6. Moreover, as a statement on an issue reserved to the Commissioner, the

ALJ was under no obligation to discuss this statement by Dr. Castaldo at all under the new regulations, much less find it persuasive. *See* 20 C.F.R. § 404.1520b(c) ("Because the evidence listed in paragraph[] . . . (c)(3) of this section is inherently neither valuable nor persuasive to the issue of whether you are disabled . . . , we will not provide any analysis about how we considered such evidence in our determination or decision . . . .").

Accordingly, we find the ALJ's evaluation of the statement of treating neurologist Dr. Castaldo is supported by substantial evidence and was reached based upon a correct application of the relevant law.

### 3. *Treating Physiatrist Assessment*

On April 29, 2019, Erbe's treating physiatrist, Ammar Abassi, M.D., completed a "present physical disabilities" form report. Dr. Abassi noted that he was presently treating Erbe. He reported a diagnosis of peripheral neuropathy, mild carpal tunnel syndrome, status post cervical fusion C5/C6 with chronic C6 radiculopathy, spinal stenosis of the lumbar region without neurogenic claudication, and a herniated disc at C5/C6. He reported Erbe's symptoms as including constant low back pain, headaches, and numbness in his feet. When asked to identify clinical findings and objective signs, he referenced EMG and

neuropsychological test results. He noted that the neuropsychological testing revealed no cognitive impairment. Dr. Abassi opined that Erbe was capable of performing sedentary work, which the form defined as "lifting 10 pounds maximum, and occasionally lifting or carrying such articles as dockets (e.g. files), ledgers and small tools." He further opined that Erbe should be totally restricted from work involving unprotected heights. (Tr. 683–86.)

Upon review, the ALJ found that this opinion was "partially persuasive." In particular, the ALJ stated that:

> Dr. Abassi completed a "present physical disabilities" form indicating that the claimant had no cognitive defects and was capable of performing sedentary work that does not involve unprotected heights. In that his opinion was issued approximately two (2) years after the date last insured and there is no indication that it was relating to the relevant period. However, to the extent that this opinion by the claimant's treating provider with extensive knowledge of his condition supports a finding that two (2) years after the claimant's date last insured without any alleged improvement in functioning he is still capable of sedentary work, it is partially persuasive in that [it] supports that he is not disabled.

(Tr. 22.)

The plaintiff only addresses the evaluation of this particular medical opinion in passing, in the penultimate paragraph of the

conclusion of his brief. He appears to object to this evaluation of the plaintiff's treating physiatrist's findings and opinions based solely on the fact that the ALJ gave greater weight to the opinion of pain management specialist Dr. Abassi than to the statement of treating neurologist Dr. Castaldo. But, for the reasons stated in the preceding section of this discussion, Dr. Castaldo's statement is inherently neither valuable nor persuasive, and thus we find no error in the ALJ's finding that Dr. Abassi's medical opinion was relatively more persuasive. The plaintiff does not otherwise challenge the ALJ's evaluation of Dr. Abassi's opinion.

Accordingly, we find the ALJ's evaluation of the opinion of treating physiatrist Dr. Abassi is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## C. Re-Weighing the Evidence

Finally, the plaintiff appears to assert an argument that, viewing the record as a whole, there was substantial evidence to support a finding of disability, and thus the ALJ's contrary decision was in error. The plaintiff summarizes the evidence and appears to suggest that the ALJ's decision should be reversed because some of this evidence contradicts the ALJ's findings. But it is the exclusive province of the ALJ, not this court,

to resolve conflicting evidence. "In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for that of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams*, 970 F.2d at 1182); *see also Stancavage v. Saul*, 469 F. Supp. 3d 311, 334 (M.D. Pa. 2020). Having otherwise found substantial evidence to support the ALJ's determination, this claim of error is meritless.

### III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Erbe was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

Dated: April 13, 2022                     ***s/Joseph F. Saporito, Jr.***
                                          JOSEPH F. SAPORITO, JR.
                                          United States Magistrate Judge